CEMETERY SERVICES, INC., and SCI Wisconsin Funeral Services, Inc., Plaintiffs-Appellants,†

v.

The WISCONSIN DEPARTMENT OF REGULATION AND LICENSING, The Funeral Directors Examining Board, and The Secretary of Regulation and Licensing, Defendants-Respondents,

The WISCONSIN FUNERAL DIRECTORS ASSOCIATION, Intervening Defendant-Respondent.

Court of Appeals

No. 97–2115. *Submitted on briefs March 9, 1998.—Decided September 10, 1998.*

(Also reported in 586 N.W.2d 191.)

†Petition to review filed.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *William M. Conley, Michael S. Heffernan* and *Emily R. Gnam* of *Foley & Lardner* of Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Bruce A. Olsen*, assistant attorney general.

On behalf of the intervening defendant-respondent, the cause was submitted on the brief of *Bryan D. Woods* of *Brennan, Steil, Basting & MacDougall, S.C.* of Madison.

Before Dykman, P.J., Eich and Roggensack, JJ.

ROGGENSACK, J.  Cemetery Services, Inc. ( Cemetery Services) and SCI Wisconsin Funeral Services, Inc. (Funeral Services) appeal from a summary judgment declaring that Cemetery Services and Funeral Services, violated §§ 157.067(2) and 445.12(6), STATS., which prohibit certain connections between cemeteries and funeral homes. Because we conclude that Cemetery Services and Funeral Services, under the undisputed facts of this case, have impermissible financial connections with each other in violation of the plain language of §§ 157.067(2) and 445.12(6) and because we also conclude that §§ 157.067(2) and 445.12(6) are not unconstitutional, as applied, we affirm the judgment of the circuit court.

## BACKGROUND

Service Corporation International (SCI), a Texas corporation, owns funeral homes and cemeteries throughout the United States. In many states, SCI consolidates its services by "clustering" funeral homes and cemeteries within a state or region. Wisconsin, however, prohibits such combined operations. Therefore, S CI created Cemetery Services to own and operate cemeteries and Funeral Services to own and operate funeral establishments, in Wisconsin.

SCI's corporate structure is very complex, involving multiple layers of subsidiaries. The relevant subsidiaries include: Funeral Services, Cemetery Services, SCI Funeral Services, Inc. (SCI Iowa), SCI Illinois Services, Inc. (SCI Illinois), SCI Great Lakes Region, Inc. (Great Lakes Region), and SCI Management, Inc. (SCI Management).

Cemetery Services and Funeral Services, both Wisconsin corporations, are wholly-owned subsidiaries of SCI Iowa, which in turn is a wholly-owned subsidiary of SCI. Cemetery Services operates cemeteries in Oshkosh, Green Bay, Racine and Appleton, and Funeral Services operates funeral establishments in West Allis, Hales Corners, Milwaukee, Beloit, Kenosha and Racine. Although Cemetery Services has a general policy against making referrals to Funeral Services, on at least one occasion, a Cemetery Services employee made a referral to an SCI affiliated funeral home in Racine.

The offices of the presidents of Cemetery Services and Funeral Services are located at Great Lakes Region's offices in Chicago, Illinois, and compensation for both officers is paid by SCI Illinois. They are not the only officers and directors common to the SCI subsidiaries. Prior to 1993, the officers and directors of

Funeral Services, Cemetery Services and SCI Iowa overlapped significantly. After 1993, Cemetery Services and Funeral Services no longer had common officers or directors, but SCI Iowa still had overlapping officers and directors with SCI.

As subsidiaries of SCI Iowa, Funeral Services and Cemetery Services have other connections with SCI. Both Wisconsin subsidiaries use SCI's address for tax and administrative purposes, and the officers and directors of Cemetery Services and Funeral Services list SCI's address as their official business addresses. Additionally, although the day-to-day operational decisions are made by the individual Wisconsin establishments, these decisions are aided by policy manuals prepared and distributed by SCI Management and business goals and objectives provided by S CI. Furthermore, the corporate decisions of both Funeral Services and Cemetery Services are made by consent resolutions signed by SCI officers, and their corporate minutes are prepared at SCI. Also, SCI Management regularly sweeps the Wisconsin funeral home and cemetery accounts into an account owned and managed by SCI Management. SCI consolidates the profits and losses of its subsidiaries in its annual report, without identifying the individual subsidiaries. Moreover, acquisitions of the Wisconsin subsidiaries are approved and funded or guaranteed by SCI.

Cemetery Services and Funeral Services brought a declaratory judgment action seeking a declaration of their rights under §§ 157.067(2) and 445.12(6), STATS. All parties moved for summary judgment. The circuit court held that the statutes in question required substantive separation and it concluded that based on the uncontroverted facts presented by the parties' affidavits, the SCI ownership structure relative to Cemetery

Services and Funeral Services established connections which violated §§ 157.067(2) and 445.12(6). This appeal followed.

## DISCUSSION

### Standard of Review.

▮▮▮▮

It is well established that this court applies the same summary judgment methodology as the circuit court. *Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 232, 568 N.W.2d 31, 34 (Ct. App. 1997). We first examine the complaint to determine whether it states a claim, and then we review the answer to determine whether it presents a material issue of fact or law. *Id.* If we conclude that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to determine whether they establish a *prima facie* case for summary judgment. *Id.* If they do, we look to the opposing party's affidavits to determine whether there are any material facts in dispute which entitle the opposing party to a trial. *Id.* at 233, 568 N.W.2d at 34.

▮▮▮▮

Here, both parties moved for summary judgment. The facts material to each party's motion are not disputed; only the application of the facts to the various factors establishing corporate connections are in dispute. Therefore, the question before us is one of statutory interpretation, or the application of a statute to undisputed facts, which we decide *de novo*. *Dodgeville Mut.*, 212 Wis. 2d at 233, 568 N.W.2d at 34. We also review challenges to the constitutionality of a statute without deference to the decision of the circuit

court. *State v. Smith*, 215 Wis. 2d 84, 90, 572 N.W.2d 496, 498 (Ct. App. 1997).

## Statutory Interpretation.

Sections 157.067(2) and 445.12(6), STATS., are central to this appeal. They contain parallel provisions which proscribe certain connections between cemeteries and funeral establishments in Wisconsin.

Section 157.067(2), STATS., provides:

> No cemetery authority may permit a funeral establishment to be located in the cemetery. No cemetery authority may have or permit an employe or agent of the cemetery to have any ownership, operation or other financial interest in a funeral establishment. Except as provided in sub. (2m), no cemetery authority or employe or agent of a cemetery may, directly or indirectly, receive or accept any commission, fee, remuneration or benefit of any kind from a funeral establishment or from an owner, employe or agent of a funeral establishment.

Section 445.12(6), STATS., provides:

> No licensed funeral director or operator of a funeral establishment may operate a mortuary or funeral establishment that is located in a cemetery or that is financially, through an ownership or operation interest or otherwise, connected with a cemetery. No licensed funeral director or his or her employe may, directly or indirectly, receive or accept any commission, fee, remuneration or benefit of any kind from any cemetery, mausoleum or crematory or from any owner, employe or agent thereof in connection with the sale or transfer of any cemetery lot, outer burial container, burial privilege or cremation, nor act, directly or indirectly, as a

broker or jobber of any cemetery property or interest therein.

In applying these statutes, whose meanings are in dispute, our efforts are directed at determining legislative intent. *Truttschel v. Martin*, 208 Wis. 2d 361, 365, 560 N.W.2d 315, 317 (Ct. App. 1997). In so doing, we begin with the plain meaning of the language chosen by the legislature. *Id.* If the language employed is clear and unambiguous, that is conclusive of legislative intent. Our inquiry ends, and we must apply the plain meaning of the statutes to the facts of this case.

In drafting §§ 157.067(2) and 445.12(6), STATS., the legislature used clear and unambiguous language to prohibit certain connections between funeral establishments and cemeteries. Both statutes plainly prohibit three types of connections: (1) operating out of the same location, (2) receiving benefits from the other form of business, and (3) having financial connections to the other form of business. The third prohibition is the focus of this case.

Because the language of §§ 157.067(2) and 445.12(6), STATS., is clear and unambiguous, we do not need to resort to legislative history. *See Milwaukee v. Linder*, 98 Wis. 2d 624, 633, 297 N.W.2d 828, 832 (1980). Therefore, we do not need to determine the effect of 1993 Wisconsin Act 100, which appellants contend modified § 445.12(6) and created § 157.067(2). Nor do we need to address the Attorney General's interpretation of the statutes because Attorney General Opinions are not part of the common law and are entitled only to such effect as we deem appropriate. *State ex. rel. La Follette v. Stitt*, 114 Wis. 2d 358, 375, 338 N.W.2d 684, 692 (1983).

Section 157.067(2), STATS., forbids those operating, owning, employed by, or acting as an agent for ceme-

teries from having "any ownership, operation or other financial interest in a funeral establishment." Similarly, § 445.12(6), STATS., forbids financial connections between cemeteries and funeral establishments through "an ownership or operation interest or otherwise." Both statutes prohibit financial connections between cemeteries and funeral establishments that are broader than direct ownership or direct control of operations. Therefore, we examine the uncontroverted facts to determine whether the appellants have financial connections to each other, either direct or indirect.

We are assisted in this regard by examining the nature of the relationship between SCI and its subsidiaries relevant to the delivery of goods and services by Funeral Services and Cemetery Services. If the subsidiary corporations have prohibited financial connections, their corporate structure will not save them from the prohibitions of §§ 157.067(2) and 445.12(6), STATS. No Wisconsin case directly examines corporate connections, as we are called to do herein. However, we are assisted by the reasoning of *Consumer's Co-Op of Walworth County v. Olsen,* 142 Wis. 2d 465, 474–78, 419 N.W.2d 211, 213–15 (1988); *Wiebke v. Richardson & Sons, Inc.,* 83 Wis. 2d 359, 363, 265 N.W.2d 571, 573 (1978) and that of the district court for the eastern district of Texas in *Sabine Towing & Transp. Co. v. Merit Ventures, Inc.,* 575 F. Supp. 1442, 1446–48 (E.D. Tex. 1983).

Those cases examine the functional integrity of corporations. The lists of factors that have been considered in this regard are most fully developed in *Sabine Towing.* There, the court described fifteen factors it used to determine whether a parent controls its subsidiaries to such an extent that the separate corporate identity of the subsidiaries should be disregarded. *Id.*

at 1446–48. The court examined whether there was: 1) common stock ownership, 2) overlapping directors and officers, 3) combined use of corporate offices, 4) capitalization of the subsidiary by the parent, 5) financing of the subsidiary by the parent, 6) control of subsidiary's stock by parent, 7) use of subsidiary's property by parent, 8) inter-corporate loans, 9) parental incorporation of the subsidiary, 10) consolidated tax returns, 11) independent decision making by the subsidiary, 12) independent decision making by the directors of subsidiary, 13) observance of formal corporate legal requirements, 14) contracts between the subsidiary and parent, and 15) fraud or injustice to third-parties.

Although the factors of *Sabine Towing* assist us, we note that the financial connections between Cemetery Services and Funeral Services which are prohibited by the statutes do not have to be such that the corporate veil of either corporation could actually be pierced and the corporate structures disregarded for all purposes. The submissions on the motions for summary judgment show that Cemetery Services and Funeral Services are wholly-owned by SCI Iowa, which in turn is wholly-owned by SCI. SCI Iowa provides no services to either Wisconsin corporation. It exists as a corporate layer between SCI and the subsidiaries, Cemetery Services and Funeral Services. SCI Iowa has overlapping officers and directors with SCI, and the presidents of Cemetery Services and Funeral Services are officers of Great Lakes Region, one of six regional subsidiaries related to SCI.

SCI Management, another subsidiary connected with SCI, controls the finances of both Wisconsin corporations through the collection of their receipts and the payment of their expenses. The officers of both Wisconsin corporations are compensated by SCI Illinois,

another related subsidiary, rather than by the Wisconsin corporations. SCI also establishes income goals for Cemetery Services and Funeral Services and they are required to get permission from SCI before making acquisitions. Cemetery Services and Funeral Services decisions are based on policy manuals prepared and distributed by SCI Management. Additionally, they make all significant operating decisions by consent resolutions prepared by SCI. Thus, major decisions regarding Cemetery Services and Funeral Services are made either entirely by SCI or by the subsidiaries under the direction of SCI. Additionally, Cemetery Services and Funeral Services each acquired corporate assets with resources provided or guaranteed by SCI or an affiliated company. SCI also treats their business operations, in a financial sense, as part of its own, *e.g.*, it uses their assets and liabilities, profits and losses in its annual report, which it publishes to show its operational record in the funeral/cemetery business.

Therefore we conclude, that based on the undisputed facts, SCI provides financial connections between Cemetery Services and Funeral Services, both directly and indirectly, through closely related subsidiaries. The corporate structure established by SCI is formalistic, not substantive, allowing SCI to make a strong financial connection between Cemetery Services and Funeral Services, and giving it the opportunity to connect its funeral and cemetery services in Wisconsin, contrary to law.

**Constitutional challenges.**

Cemetery Services and Funeral Services make constitutional, as applied, challenges to the circuit

828

court's interpretation of §§ 157.067(2) and 445.12(6), STATS., on the following grounds: 1) vagueness, 2) impermissible regulation of interstate commerce, 3) taking of property without due process, and 4) impairment of the obligation of contracts. All statutes reach this court with a presumption that they are constitutional and we review those statutes to preserve their constitutionality. *State v. Ruesch,* 214 Wis. 2d 547, 555, 571 N.W.2d 898, 902 (Ct. App. 1997) (citing *State v. Bertrand,* 162 Wis. 2d 411, 415, 469 N.W.2d 873, 875 ( Ct. App. 1991)). A party who brings a constitutional challenge to a statute must show that it is unconstitutional beyond a reasonable doubt. *State v. McManus,* 152 Wis. 2d 113, 129, 447 N.W.2d 654, 660 (1989).

*1. Vagueness.*

Vagueness is a procedural due process concept which is driven by notions of fair play. A statute is void for vagueness if it does not provide "fair notice" of the prohibited conduct and also provide an objective standard for enforcement of violations. *State v. Pittman,* 174 Wis. 2d 255, 276, 496 N.W.2d 74, 83 (1993). In other words, "[t]he first prong of the vagueness test is concerned with whether the statute sufficiently warns persons 'wishing to obey the law that [their] . . . conduct comes near the proscribed area.' " *Id.* (quoting *State v. Tronca,* 84 Wis. 2d 68, 86, 267 N.W.2d 216, 224 (1978)). However, a statute is not void for vagueness simply because in some particular instance some type of conduct may create a question about its impact under the statute. *State v. Courtney,* 74 Wis. 2d 705, 711, 247 N.W.2d 714, 719 (1976). In order to be void for vagueness under the first prong, the statute must be so ambiguous that one who is intent upon obedience can-

not tell when proscribed conduct is approached. *Id.* Under the second prong of enforceability, a statute is vague only if a finder of fact must apply its own standards of culpability rather than those set out in the statute. *Id.*

Here, appellants have analyzed neither prong of the vagueness test, rather they argue that the statute is overly broad because the amendment of § 445.12(6), STATS., eliminated an "existing, common law limit on the meaning of 445.12." Our research, as well as that presented in the briefs of all parties, showed no prior construction of § 445.12(6), or its predecessor. Therefore, there was no "existing" common law that the circuit court should have applied to this statute. The statute gives fair notice that funeral establishments and cemeteries are not to have financial connections to one another, either through ownership, operations or otherwise. It appears from the layered, wholly-owned subsidiaries that SCI constructed that it was well aware that it could not own or operate both funeral establishments and cemeteries in Wisconsin, *i.e.*, that the laws of this state required it to choose which business it would conduct here. The statutes are not vague merely because we have concluded SCI cannot do indirectly what it knew it could not do directly.

### 2. *Other Constitutional Claims.*

The appellants also raise constitutional claims bottomed on the commerce clause and the due process clause of the United States Constitution, and on the contract clauses of the state and federal constitutions. Appellants state these claims in broad terms without setting the legal parameters which must be used in analyzing such claims and without applying relevant

precedent to the undisputed facts presented here. For example, in regard to the commerce clause challenge, appellants cite *Healy v. Beer Inst., Inc.*, 491 U.S. 324 (1989) and *Edgar v. MITE Corp.*, 457 U.S. 624 (1982), without any analysis of why they provide precedent for appellants' constitutional challenge. *Healy* deals with the regulation of out of state liquor sales and its effect on interstate commerce. There are no out of state sales at issue under the facts of this case. *Edgar* involves corporate take-overs, another subject far afield from the facts of this case.

■

Constitutional claims are very complicated from an analytic perspective, both to brief and to decide. A one or two paragraph statement that raises the specter of such claims is insufficient to constitute a valid appeal of these constitutional issues to this court. For us to address undeveloped constitutional claims, we would have to analyze them, develop them, and then decide them. We cannot serve as both advocate and court. For this reason, we generally choose not to decide issues that are not adequately developed by the parties in their briefs. *Truttschel*, 208 Wis. 2d at 369, 560 N.W.2d at 319. Because of their complexity and lack of development, we will not address the three remaining constitutional arguments of the appellants.

## CONCLUSION

Based on the plain language of §§ 157.067(2) and 445.12(6), STATS., and the undisputed facts of this case, Cemetery Services and Funeral Services have financial connections which violate these statutes, both of which were applied in a constitutional manner. Therefore, we affirm the judgment of the circuit court.

831

*By the Court.*—Judgment affirmed.